IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

---

**LUCILLE PETERSON,**
 Plaintiff,

v.

**KATHERINE KILO-PETERSON;**
**FAMILY CRISIS INTERNATIONAL**
**YOUTH ASSISTANCE, INC.,**
**d/b/a WEST SHIELD ADOLESCENT**
**SERVICES;**
**ALLEN P. CARDOZA; CHASE CARDOZA;**
**MARVIN SMITH;**
**DIANA LARRIVA; ANGELA SINGER;**
**DORCY PRUTER;**
**CONSCIOUS CO-PARENTING**
**INSTITUTE; CRAIG CHILDRESS;**
**JERRY L. MARKS, PhD, LCSW;**
**KATHLEEN ANNE THOMPSON,**
**professionally known as KATIE**
**THOMPSON; and**
**CONSANO THERAPY, LLC,**
 Defendants.

Case No. **4:26-cv-01128-ACL**

**JURY TRIAL DEMANDED**

---

### COMPLAINT FOR DAMAGES
(Assault; Battery; False Imprisonment; Intentional Infliction of
Emotional Distress; Fraudulent Misrepresentation; Breach of Fiduciary
Duty; Negligence; Civil Conspiracy)

### JURY TRIAL DEMANDED

Plaintiff Lucille Peterson, for her Complaint against Defendants, states as follows:

### I. NATURE OF THE ACTION

1. In March 2020, Defendant Katherine Kilo-Peterson paid West Shield Adolescent

Services and Dorcy Pruter's program company $30,000 or more to seize her sixteen-year-

old daughter, Lucille, transport her across the country against her will, and confine her

for approximately three weeks in a coercive "reunification" program, all without any court order authorizing it.

2. Lucille was ambushed at her mother's own home at 2216 Putter Lane, Saint Louis, Missouri 63131. West Shield's agents had already been let inside the home and were waiting for her when she arrived for scheduled spring break visitation. She was threatened with handcuffs and physical restraint, shown a fabricated "court order," forced onto a commercial flight, held in California with her iPhone and iWatch confiscated and all contact with her father cut off, and warned that she would be seized again if she did not cooperate. Her mother kept her past the end of her lawful custody period and concealed her whereabouts until police intervened.

3. The experience left Lucille with severe, medically diagnosable emotional distress. This is an action for money damages for those harms.

## II. PARTIES

4. Plaintiff Lucille Peterson ("Lucille") is a natural person, now an adult, born July 16, 2003, and a citizen of the State of Florida. She was sixteen years old at the time of the conduct alleged.

5. Defendant Katherine Kilo-Peterson ("Kilo-Peterson") is Lucille's mother and a citizen of the State of Missouri. She arranged, directed, and paid for the seizure, transport, confinement, and program described below.

6. Defendant Family Crisis International Youth Assistance, Inc., doing business as West Shield Adolescent Services ("West Shield"), is a corporation organized under the laws of the State of California, Entity No. 1731294. West Shield's registered type of business

with the California Secretary of State is stated as "Transportation." West Shield also holds itself out publicly, including on its own website, as providing "General Investigations" and "Locating Runaways" services in addition to youth transport.

7.      Defendant Allen P. Cardoza is, on information and belief, the Chief Executive Officer of West Shield and a citizen of the State of California. Cardoza is also, on information and belief, the Owner and Principal, and the individually designated Qualified Manager, of California Bureau of Security and Investigative Services Private Investigator License No. 7824, active and in current status, held under the name West Shield Invest and Sec Cnsltnts at the same Huntington Beach, California address used in the Declaration of Authority and Transport Assignment Sheet described below. On information and belief, West Shield's transport and investigation operations are conducted through or in conjunction with this licensed private investigation business.

8.      Defendant Chase Cardoza is, on information and belief, the Secretary, Chief Financial Officer, and sole Director of West Shield and a citizen of the State of California.

9.      Defendants Marvin Smith and Diana Larriva are the two West Shield agents who carried out the seizure of Lucille in Missouri and are, on information and belief, citizens of the State of California.

10.     Defendant Angela Singer is the individual who, at Kilo-Peterson's direction, booked and paid for the transport agents' travel and California lodging, and is a citizen of the State of Missouri.

11.     Defendant Dorcy Pruter, through the Conscious Co-Parenting Institute, owns and operates the "High Road to Reunification" program that received and held Lucille, and is,

on information and belief, a citizen of, or organized under the laws of, the State of California. Defendant Craig Childress authored the underlying assessment methodology and rating scale that the program applies and has publicly defended the program's application of that methodology in cases of this kind, but did not himself own or operate the program. Childress is, on information and belief, a citizen of the State of California.

12. Defendant Jerry L. Marks, PhD, LCSW ("Marks") is a psychologist and Missouri Licensed Clinical Social Worker, License No. 001120, who referred Pruter into the underlying custody matter and is, on information and belief, a citizen of the State of Missouri. Marks was aligned with the reunification program apparatus described below and was identified by Kilo-Peterson herself, on April 3, 2020, as a witness to support her account of psychological abuse.

13. Defendant Kathleen Anne Thompson, professionally known as "Katie Thompson" ("Thompson"), is a Missouri Licensed Professional Counselor, License No. 2012022742, current and in good standing, and a citizen of the State of Missouri.

14. Defendant Consano Therapy, LLC ("Consano") is a Missouri limited liability company, LC001443225, organized April 14, 2015, and is a citizen of the State of Missouri.

15. Every Defendant is a citizen of California or Missouri. No Defendant is a citizen of Florida.

### III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). There is complete diversity of citizenship: Plaintiff is a citizen of Florida, and no Defendant is a citizen of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs.

17. The domestic relations exception to diversity jurisdiction does not apply. Plaintiff seeks only money damages for personal injury and fraud torts and seeks no divorce, alimony, or child custody decree. See Ankenbrandt v. Richards, 504 U.S. 689 (1992).

18. This Court has personal jurisdiction over Kilo-Peterson, who is domiciled in Missouri and who committed tortious acts within Missouri, including executing the "Declaration of Authority" that directed the seizure and procuring the seizure of Lucille at her own home at 2216 Putter Lane, Saint Louis, Missouri 63131.

19. This Court has personal jurisdiction over West Shield and its agents under the Missouri long arm statute, Mo. Rev. Stat. § 506.500, and consistent with due process. West Shield contracted to perform, and its agents Smith and Larriva physically carried out, the seizure of Lucille at her mother's residence in St. Louis County, Missouri. West Shield thereby transacted business and committed a tortious act within Missouri, purposefully availing itself of the privilege of conducting activities here, and Plaintiff's claims arise directly from those Missouri contacts. This is not a case of incidental or remote contact of the kind found insufficient in Arnold v. AT and T, Inc., 874 F.Supp.2d 825 (E.D. Mo. 2012) (mail and telephone contacts alone insufficient), or Viasystems, Inc. v. EBM-Papst St. Georgen GmbH and Co., KG, 646 F.3d 589 (8th Cir. 2011) (scattered emails, calls, and a wire transfer insufficient). West Shield's own agents personally entered Missouri and physically committed the tortious seizure alleged in this Complaint.

20. This Court has personal jurisdiction over the remaining Defendants because they acted in concert to accomplish tortious conduct expressly aimed at, and completed in, Missouri, the seizure of a Missouri resident at her own Missouri home, and because Defendant

Thompson's post seizure coercion of Lucille occurred within Missouri. The effects of the conspiracy were felt in Missouri, where Lucille then resided.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). Kilo-Peterson resides in this District, and a substantial part of the events giving rise to the claims, the fabrication and execution of the transport authority, the seizure, and the later coercion, occurred in this District.

22. Missouri substantive law governs Plaintiff's claims under the most significant relationship test. The seizure occurred in Missouri, Plaintiff resided in Missouri at the time, and the parties' relevant relationships center in Missouri. To the extent any conduct is governed by California law, California law affords equivalent or greater protection.

## IV. FACTUAL ALLEGATIONS

### A. The Custody Framework

23. Under the family court orders then in effect in Circuit Court of St. Charles County, Missouri, Case No. 0511-FC02411-07, Lucille's father held joint physical custody of Lucille with her mother. Kilo-Peterson's physical custody was authorized only for a defined spring break period, March 13 through March 30, 2020.

24. The operative orders required that Lucille be permitted to keep her telephone and to contact her other parent, and that decisions about counseling be made jointly by both parents.

25. Kilo-Peterson did not confer with Lucille's father. Instead, in late 2019, she engaged the "High Road to Reunification" program operated by Pruter and Childress, a referral made by Marks, and arranged for Thompson to serve as Lucille's purportedly "independent"

counselor, a counselor who was in fact selected by, and working with, Kilo-Peterson and the program.

## B. The Fabricated Authority

26. Kilo-Peterson retained West Shield, paid it and Pruter's program company $30,000 or more, and personally signed a document titled "Declaration of Authority," effective March 10, 2020, that directed West Shield to take custody of and transport Lucille, authorized the company to "locate and safely hold or restrain" her, and represented in writing that Kilo-Peterson believed Lucille "may be a danger to herself or others."

27. The "danger to herself or others" representation was false, and Lucille has since read the authorization document herself and confirmed its content and falsity under oath. No physician or qualified professional had evaluated her or determined she posed any danger to herself or others, and she had never done anything to suggest such a risk. This false representation was made to, and relied upon by, both West Shield and Pruter's program company in undertaking the seizure and confinement. West Shield's own "Transport Assignment Sheet" recorded the precipitating circumstance not as a safety emergency but as a custody and alienation dispute.

28. Kilo-Peterson directed Angela Singer to book and pay for the West Shield agents' flights and the California hotel.

## C. The March 13, 2020 Seizure in Missouri

29. On March 13, 2020, as Lucille arrived at her mother's home at 2216 Putter Lane, Saint Louis, Missouri 63131 for the scheduled visitation, West Shield agents Marvin Smith and Diana Larriva, who were already inside the home waiting for her, seized her, pushed her against the door, and took her iPhone, iWatch, and keys.

30. The agents threatened to handcuff and to tackle Lucille. They showed her a single sheet of paper bearing only a judge's signature, which they represented to be a court order authorizing the program, though no such order existed, as Lucille has since confirmed under oath. They warned her that it "would not end well" if she sought help at the airport.

31. The agents placed Lucille in a child locked vehicle, drove her to the airport, and forced her onto a commercial flight to California. A male agent stayed overnight in Lucille's hotel room, a placement Lucille has attested the agents themselves described as contrary to the company's own stated policy.

## D. The California Confinement

32. Lucille was held for approximately three weeks at the program's San Pedro, California location. Her iPhone and iWatch were withheld, and monitoring software was installed on her school computer. She was denied contact with her family, including her extended family.

33. During the confinement, Pruter told Lucille that she would be taken again if she did not "cooperate," including a threat to send her to a wilderness camp in Utah.

## E. Detention Beyond the Custodial Period and Concealment

34. Kilo-Peterson's custodial authority ended on March 30, 2020. She did not return Lucille. Instead, she kept Lucille in California and concealed her whereabouts.

## F. The April 3, 2020 Law Enforcement Intervention

35. On or about April 3, 2020, officers of the Los Angeles Police Department responded. They reviewed the custody order, confirmed that the custodial period had expired and that no signed order authorized the detention, warned that continued detention could

support a child concealment report, and released Lucille to her father. The encounter was recorded on police body worn cameras.

36.     During that encounter, Kilo-Peterson admitted, on camera, that she had paid approximately $30,000 for the "reunification." This statement is an admission by a party opponent under Fed. R. Evid. 801(d)(2).

## G. Continuing Coercion After Lucille's Return

37.     After Lucille returned home to Missouri, Thompson, working with Pruter, pressured Lucille to attend counseling inside the very home where she had been seized, under threat of court sanction. Kilo-Peterson made clear that Lucille could be "transported again" if she did not comply, leaving Lucille under a continuing threat of another seizure.

38.     Defendant Angela Singer, in addition to booking and paying for the transport agents' travel and lodging as alleged above, thereafter continued to press Lucille to accept her and her family as a custodial alternative to Kilo-Peterson. Lucille repeatedly refused contact with Singer and, in writing, identified Singer as having helped arrange the seizure and as having made hotel arrangements while Kilo-Peterson concealed Lucille from the Los Angeles police and her father.

## H. The Nature and Severity of the Harm

39.     The conduct alleged inflicted severe emotional distress on Lucille. She was seized by strangers, physically forced onto an aircraft under threat of restraint, transported across the country against her will, held incommunicado, stripped of the means to contact her family, subjected to a coercive program premised on a fabricated court order and a false representation that she was a danger to herself, and thereafter kept under a standing threat of re-seizure.

40. Lucille's resulting emotional distress is severe. She has attested that her treating clinician, Barbara Edelman, MSW, LCSW, diagnosed her with post traumatic stress disorder arising from these events and instituted EMDR treatment. It is of a nature and degree that no reasonable person could be expected to endure.

## I. Pattern and Notice

41. West Shield's methods were known to be legally problematic. A police legal bulletin advised law enforcement not to assist West Shield in forcing entry into residences. In a prior, closely parallel California case involving West Shield and the same "Declaration of Authority" form, the company carried out a nearly identical seizure of a minor, establishing a pattern of conduct and prior notice relevant to punitive damages.

42. West Shield's own website publicly describes its services as including "General Investigations" and "Locating Runaways," in addition to youth transport.

43. On information and belief, West Shield operates through, or in conjunction with, a California Bureau of Security and Investigative Services Private Investigator license, License No. 7824, held under the name West Shield Invest and Sec Cnsltnts at the same Huntington Beach, California address used in the Declaration of Authority and Transport Assignment Sheet described above, with Defendant Allen P. Cardoza as that license's Owner, Principal, and individually designated Qualified Manager. As a licensed private investigation business, West Shield was held to a professional standard of care requiring verification of a client's factual representations before acting on them, a standard it failed to meet when it acted on Kilo-Peterson's unverified representation that Lucille was a danger to herself.

44.    As of the date of this Complaint, public regulatory records reflect that this private investigator license's address of record has not been updated to match West Shield's corporate relocation to Sacramento, California, filed with the California Secretary of State on April 21, 2026, a recent and ongoing regulatory lapse offered here as further evidence of the enterprise's disregard for its own professional and regulatory obligations, and not as conduct contemporaneous with the events of March and April 2020 alleged above.

## J. The 2021 to 2022 Mental Incapacity Motion and Dr. Levin's Evaluation

45.    In connection with continuing litigation following Lucille's marriage and subsequent annulment, a motion was raised contending Lucille was mentally incapacitated from supporting herself under Mo. Rev. Stat. § 452.340.4, which permits a court to extend a parental support obligation past a child's eighteenth birthday where the child is physically or mentally incapacitated, insolvent, and unmarried.

46.    Lucille retained Daniel Levin, Ph.D., a Missouri licensed clinical psychologist, License No. 0125720, licensed since 1987, to evaluate her mental capacity. Dr. Levin conducted an extended clinical interview, behavioral observations, and reviewed her history and written communications.

47.    On January 13, 2022, Dr. Levin executed a sworn affidavit concluding, to a reasonable degree of professional certainty, that Lucille does not have a mental condition that incapacitates her from supporting herself or earning a living in any type of job, stating that the question was "not a close question." Dr. Levin's affidavit further states that no party or proxy attempted to contact or influence him in reaching his opinion.

## V. TIMELINESS OF CLAIMS

48.  Lucille was sixteen years old when the conduct alleged occurred. Under Mo. Rev. Stat. § 516.170, the limitations period applicable to each of her claims was tolled during her minority and did not begin to run until she attained twenty one years of age on July 16, 2024.

49.  Plaintiff's claims for assault, battery, and false imprisonment are governed by the two year period of Mo. Rev. Stat. § 516.140 and are timely brought within two years of July 16, 2024. Plaintiff's claims for intentional infliction of emotional distress, breach of fiduciary duty, and negligence are governed by the five year period of Mo. Rev. Stat. § 516.120 and are likewise timely. Plaintiff's fraud claim is also governed by § 516.120, which provides that a fraud claim does not accrue until discovery of the facts constituting the fraud, at any time within ten years of the fraudulent act.

50.  The 2020 marriage was annulled by order of a Wyoming court on February 17, 2021. Unlike a divorce, an annulment holds that the marriage did not legally exist. No emancipation of Lucille therefore occurred, and the tolling of Mo. Rev. Stat. § 516.170 was not interrupted.

## COUNT I: ASSAULT

*Against Smith, Larriva, West Shield, Allen P. Cardoza, and Chase Cardoza; and Kilo-Peterson as procurer and co-conspirator*

51.     Plaintiff incorporates each preceding paragraph.

52.     The West Shield agents intentionally threatened to handcuff and to tackle Lucille, placing her in reasonable apprehension of imminent harmful and offensive bodily contact. Lucille did not consent.

53.     West Shield and the Cardozas are liable for the assault by respondeat superior and by their authorization and direction of the agents' conduct. Kilo-Peterson is liable for procuring, directing, and paying for the conduct, and as a co-conspirator under Count VIII.

54.     As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial.

## COUNT II: BATTERY

*Against Smith, Larriva, West Shield, Allen P. Cardoza, and Chase Cardoza; and Kilo-Peterson as procurer and co-conspirator*

55.     Plaintiff incorporates each preceding paragraph.

56.     The West Shield agents intentionally made harmful and offensive bodily contact with Lucille without her consent. They seized her, pushed her against the door, took her iPhone, iWatch, and keys from her person, and forced her into a vehicle and onto an aircraft.

57.     West Shield and the Cardozas are liable by respondeat superior and by their authorization and direction of the conduct. Kilo-Peterson is liable for procuring, directing, and paying for the conduct, including the use of force, and as a co-conspirator under Count VIII.

58.     As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial.

## COUNT III: FALSE IMPRISONMENT

*Against Kilo-Peterson, West Shield, Allen P. Cardoza, Chase Cardoza, Smith, Larriva, Pruter, the Conscious Co-Parenting Institute, and Childress*

59.     Plaintiff incorporates each preceding paragraph.

60.     Under Missouri law, false imprisonment consists of the detention or restraint of the plaintiff against her will and the unlawfulness of that detention.

61.     Lucille was knowingly confined against her will, during the vehicle restraint, the forced flight, and the approximately three week California confinement, without lawful authority.

62.     The detention was unlawful. After March 30, 2020, Kilo-Peterson's custodial authority had indisputably expired and the continued detention rested on no authority whatsoever, a fact Lucille has confirmed under oath, stating that she has since learned that the court did not order her removal. For the earlier period, any claimed parental authority was procured through a fabricated court order and the false representation that Lucille was a danger to herself, and was exercised in violation of the order's requirements that Lucille retain her telephone and contact with her father, which defeats any such authority.

63.     Each named Defendant participated in effecting or maintaining the confinement. As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Against Kilo-Peterson, Pruter, the Conscious Co-Parenting Institute, Childress, Thompson, and Consano Therapy, LLC*

64.    Plaintiff incorporates each preceding paragraph. This Count rests on conduct independent of the assault, battery, and confinement alleged above.

65.    Under Missouri law, a claim for intentional infliction of emotional distress lies where the defendant's conduct is extreme and outrageous, is intended to cause or recklessly disregards a high probability of causing severe emotional distress, and in fact causes distress that is medically diagnosable and medically significant.

66.    The following conduct was extreme and outrageous: Kilo-Peterson's concealment of Lucille's whereabouts after her custodial authority had expired; Kilo-Peterson's repeated threats that Lucille could be "transported again"; Pruter's threats during the confinement that Lucille would be taken again, including to a wilderness camp in Utah, if she did not "cooperate"; and Thompson's coercion of Lucille to attend counseling inside the very home where she had been seized, under threat of court sanction. This conduct exceeds all bounds of decency and is intolerable in a civilized community.

67.    Defendants acted intentionally, or with reckless disregard of the high probability of causing Lucille severe emotional distress.

68.    The conduct caused Lucille severe emotional distress, including post traumatic stress disorder as diagnosed by her treating clinician, Barbara Edelman, MSW, LCSW. As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial.

## COUNT V: FRAUDULENT MISREPRESENTATION

*Against Smith, Larriva, West Shield, Thompson, and Consano Therapy, LLC; and Kilo-Peterson as co-conspirator*

69.    Plaintiff incorporates each preceding paragraph.

70.    On March 13, 2020, Smith and Larriva represented to Lucille that a judge had ordered the program, and showed her a signature only page they represented to be a court order. That representation was false, was known by the agents to be false, and was made to induce Lucille's submission to the seizure. Lucille, then sixteen, reasonably relied on the representation and submitted, to her injury.

71.    Thompson represented to Lucille that she was an independent counselor when in fact she was selected by, and working with, Kilo-Peterson and the program. That representation was false, was known by Thompson to be false, and was made to induce Lucille's participation and confidence. Lucille reasonably relied on it, to her injury. Consano Therapy, LLC is vicariously liable.

72.    Kilo-Peterson's written representation to West Shield and to Pruter's program company that Lucille "may be a danger to herself or others" was knowingly false and was the instrument by which the seizure was procured. Kilo-Peterson is liable for the fraud committed on Lucille in furtherance of the common scheme, as a co-conspirator under Count VIII.

73.    Childress has publicly represented that the protective separation and program he defends requires prior authorization from a judge, stating in his own published writing that Pruter, as the program's operator, "is not a judge" and "does not order protective separations," and that only a court may do so. No judge authorized the seizure or separation of Lucille. Childress's public defense of the program's application in cases of this kind, including

this one's genre of case, in the face of his own stated prerequisite, supports an inference of knowing or reckless disregard for the absence of lawful authority.

74. As a direct and proximate result of the misrepresentations, Lucille suffered damages in an amount to be proven at trial.

## COUNT VI: BREACH OF FIDUCIARY DUTY

*Against Thompson and Consano Therapy, LLC*

75. Plaintiff incorporates each preceding paragraph.

76. As Lucille's counselor, Thompson owed Lucille duties of loyalty and confidentiality.

77. Thompson breached those duties by acting as an undisclosed agent adverse to Lucille's interests, selected by and working with Kilo-Peterson and the program, while holding herself out as Lucille's independent counselor, and by using that position to coerce Lucille's participation. Consano Therapy, LLC is vicariously responsible for Thompson's conduct.

78. As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial.

## COUNT VII: NEGLIGENCE

*Pleaded in the alternative, against West Shield, Allen P. Cardoza, Chase Cardoza, Smith, Larriva, Pruter, the Conscious Co-Parenting Institute, Childress, and Marks*

79. Plaintiff incorporates each preceding paragraph and pleads this Count in the alternative to the intentional tort Counts.

80. West Shield and its principals and agents owed Lucille a duty of reasonable care, including a duty to verify the existence of lawful authority, a court order or valid custodial authority, before seizing, restraining, and transporting a child across state lines,

and a duty adequately to train and supervise their agents. On information and belief, this duty was heightened by West Shield's operation through, or in conjunction with, a licensed California private investigation business, which by its licensure holds itself to a professional standard requiring verification of a client's factual claims before acting on them. West Shield breached these duties by seizing and transporting Lucille on a parent's unverified say so and a signature only page, without verifying any court order or custodial authority.

81.    The program Defendants, including Marks, owed Lucille a duty of reasonable care and breached it. Marks did so by referring Lucille into a coercive program without adequate vetting or safeguards, and Pruter and the Conscious Co-Parenting Institute did so by designing and operating, and Childress did so by authoring the methodology for and publicly defending, a program that foreseeably traumatized her.

82.    On information and belief, the assessment methodology and rating scale Childress authored and Pruter's program applies to children including Lucille has not been shown to be reliable or valid by the standards ordinarily applied in clinical psychology, and the program's separation of a child from a parent she wished to remain with, imposed without prior judicial authorization, was neither reasonably designed nor reasonably administered to avoid foreseeable psychological harm.

83.    These breaches directly and proximately caused Lucille's injuries, in an amount to be proven at trial.

## COUNT VIII: CIVIL CONSPIRACY

*Against all Defendants*

84.     Plaintiff incorporates each preceding paragraph.

85.     Under Missouri law, civil conspiracy requires two or more persons, an unlawful objective, a meeting of the minds on the object or course of action, one or more unlawful overt acts, and damages proximately resulting. Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 781 (Mo. banc 1999).

86.     Defendants agreed and acted in concert to accomplish the seizure, interstate transport, and confinement of Lucille. In furtherance of that agreement they committed unlawful overt acts, including Marks's referral of Lucille into the program, the fabrication of authority, the seizure in Missouri, the forced transport, the confinement in California, and the concealment and continuing coercion thereafter.

87.     As a direct and proximate result, Lucille suffered damages in an amount to be proven at trial. Each conspirator is jointly and severally liable for the acts of the others committed in furtherance of the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lucille Peterson prays for judgment against Defendants, jointly and severally, and requests the following relief:

(a) Compensatory damages in an amount to be determined at trial, in excess of $75,000, for loss of liberty, severe emotional distress and post traumatic stress disorder, and other personal injury;

(b) Punitive damages in an amount sufficient to punish Defendants and deter like conduct;

(c) Pre-judgment and post-judgment interest as allowed by law;

(d) Plaintiff's costs of suit; and

(e) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

Lucille Peterson
Plaintiff, Pro Se
USPS PO Box 141041
Gainesville, FL 32614
Telephone: 314-995-8786
Email: spetersonandlpeterson@gmail.com
Dated: July 16, 2026

## EXHIBIT INDEX

| Ex. | Description | Status / Authentication |
|---|---|---|
| A | Operative custody order and parenting plan, Circuit Court of St. Charles County, Missouri, Case No. 0511-FC02411-07 | Certified copy to be filed |
| B | "Declaration of Authority" signed by Kilo-Peterson, effective March 10, 2020 | West Shield contract packet |
| C | West Shield "Transport Assignment Sheet," March 10, 2020 | West Shield contract packet |
| D | California Secretary of State Statement of Information for Family Crisis International Youth Assistance, Inc., filed April 21, 2026, and prior filing history (Entity No. 1731294) | Certified corporate records |
| E | LAPD Harbor Division body camera recordings, April 3, 2020 | FRE 902(11) custodian certification via LAPD subpoena |
| F | California Bureau of Security and Investigative Services license record, License No. 7824, West Shield Invest & Sec Cnsltnts | Public regulatory record, search.dca.ca.gov |
| G | West Shield Adolescent Services website, "Youth Transport Service" page (westshield.com) | Public website, archived |
| H | Wyoming annulment decree (L.E.P.), February 17, 2021 | Certified copy, minority tolling |
| I | Lucille Peterson's signed and notarized affidavit, August 10, 2020, Circuit Court of St. Charles County | Notarized, sworn under penalty of perjury |
| J | Affidavit of Daniel Levin, Ph.D., January 13, 2022 | Notarized, sworn under penalty of perjury |
| K | Missouri Division of Professional Registration license records for Kathleen Anne Thompson (Lic. No. 2012022742) and Jerry Marks (Lic. No. 001120) | Primary source, pr.mo.gov |
| L | Consano Therapy, LLC Articles of Organization and Certificate of Organization, Missouri LC001443225 | Missouri Secretary of State |
| M | Southwest Airlines flight and billing records, March 2020 | Confirms Singer and Cardoza payment for transport travel |
| N | Report of Jean Mercer, Ph.D., Professor Emerita of Psychology, Stockton University, May 10, 2020 | Notarized, sworn under penalty of perjury |
| O | Craig Childress, "Dorcy Pruter and the High Road Protocol," published blog post, June 14, 2016 | Public statement by Defendant Childress |